CHEMTECH INDUSTRIES, INC.
Petitioner-Appellant,

v.

LABOR AND INDUSTRIAL RELATIONS COMMISSION, DIVISION OF EMPLOYMENT SECURITY, and Fred Arnold, et al. Respondents.

No. 42634.

Missouri Court of Appeals,
Eastern District,
Division One.

May 26, 1981.

122

D. Michael Linihan, St. Louis, for petitioner-appellant.

Rick V. Morris, Larry R. Ruhmann, Div. of Employment Sec., Jefferson City, for respondents.

STEWART, Judge.

This is an appeal by Chemtech Industries, Inc. (Chemtech) from a judgment of the Circuit Court of St. Louis County affirming

the decision of the Labor and Industrial Relations Commission that denied Chemtech's application for review of the decision of the Appeals Tribunal of the Division of Employment Security. The decision held that thirty-six claimants who had been employed by Chemtech were not ineligible for benefits by reason of § 288.040.5(1) RSMo 1975 Supp. which provides as follows:

"A claimant shall be ineligible for waiting week credit or benefits for any week for which the deputy finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute in the factory, establishment or other premises in which he is or was last employed . . ."

We have had a degree of difficulty in ascertaining just what Chemtech's contentions are from its points relied on. We have discerned from a reading of the briefs of the parties that the ultimate issue that Chemtech urges in this case is whether the Commission could have concluded that thirty-six persons who had been employed by Chemtech were eligible for unemployment benefits in that they were able to work, were available to work and were not unemployed due to a stoppage of work which existed because of a labor dispute for the periods claimed by the claimants.

■■■ Before we discuss the issues we will set out the basis of our review. We must defer to the Commission's findings of fact. The Commission could believe or disbelieve all, none or any part of the testimony even when the testimony is produced by only one of the interested parties. We view the evidence in the light most favorable to the Commission's decision. We may set aside the Commission's findings only if they are clearly contrary to the overwhelming weight of the evidence. *Tri-State Motor Transit Co. v. Industrial Commission,* 509 S.W.2d 217, 220 (Mo.App.1974). After viewing the evidence in the light most favorable to the decision of the Commission we must determine whether the Commission was warranted in reaching its conclusion upon those facts under the law of the case. *Trail v. Industrial Commission,* 540 S.W.2d 179 (Mo.App.1976); § 288.210 RSMo 1969.

Chemtech is engaged in the sale and distribution of chemical products. On February 14, 1977, two of its locations were struck by seventy of its employees who were members of Teamsters Local 618. The striking employees were classified as warehousemen, truck drivers, mechanics, tankermen and maintenance workers. Immediately after the employees struck, Chemtech began hiring replacements. Claims for unemployment compensation were filed by thirty-six of the employees who had gone out on strike. On or after February 20, 1977, a deputy for the Division of Employment Security denied all of the claims on the ground that the claimants were unemployed because of a work stoppage as a result of a labor dispute at the premises where they were last employed. The deputy did not make a finding as to the ability to work or as to the availability of the claimants for work. The claimants appealed the deputy's determination to the Appeals Tribunal where the case was heard before the appeals referee who made a determination that the claimants were not ineligible for benefits by reason of § 288.040.5 RSMo 1975 Supp. This determination became the decision of the Commission when it denied Chemtech's petition for review.

At the hearing before the referee the only witness was Chemtech's personnel manager. Other evidence consisted of documentary exhibits.

The referee and consequently the Commission in addition to the facts set out above, made the following finding of fact:

"The above 36 claimants all participated in that strike.

.    .    .    .    .

Following the strike the employer immediately began hiring replacements. By using replacements and supervisory personnel, the employer continued operations. By February 20, 1977, 48 replacement workers had been hired and by February 27, 1977, this number grew to 68.

Due to attrition not all of these replacements remained in employment by the employer but by March 15, 1977, the employer again had 70 regular workers employed. A witness for the employer testified that although there were mistakes by inexperienced workers, some of which were costly, the employer was at all times able to accept orders and to make delivery of all orders although delivery was sometimes delayed. There is no evidence that a single order or sale was lost or that a single customer was lost. There were some complaints from customers. On April 1, 1977, the strike ended and pickets were withdrawn. The above claimants, however, were not reinstated in their jobs because they had been replaced by other workers who were considered by the employer as permanent employees."

Upon these findings the referee concluded that there was no work stoppage in Chemtech's struck locations, and that the employer had abandoned the labor dispute by hiring permanent replacements.

Chemtech challenges both conclusions. The question of whether the employer had abandoned the labor dispute presents an interesting question, however, we do not have to answer that question in view of the position that we take.

If in fact there was no work stoppage the question of whether there was a labor dispute is mooted.

■ "Stoppage of work" is defined by statute as "a substantial diminution of the activities, production or services at the establishment plant, factory, or premises of the employing unit." § 288.040.5(2) RSMo 1975 Supp. The term refers "to the employer's operations, not to the employees' labor or cessation of work by claimants." *Tri-State Motor Transit Co. v. Industrial Commission, supra,* at 221.

In this case most of the evidence consisted of the direct testimony and the cross-examination of Chemtech's personnel manager. It revealed, in line with the referee's findings, that Chemtech began hiring permanent replacements for the strikers on the day the strike began. On that day sixteen persons were hired. By February 20, 1977, forty-eight persons had been replaced, sixty-eight by February 27, 1977 and seventy positions had been filled by March 15. On April 1, the striking employees abandoned the strike. Chemtech retained the replacement employees.

There was evidence from which the Commission could find that during the strike Chemtech was able to accept all orders and make all deliveries and that it did not lose a single sale or customer. The house publication advised employees and stockholders that Chemtech was able to continue "deliveries on an uninterrupted basis" and that it continued "to accept orders based on a normal schedule for delivery."

While there was evidence that Chemtech experienced difficulties such as overloading tank trucks and spills, there was also evidence that spills occurred prior to the strike. There were accusations that the strikers damaged equipment and that Chemtech experienced difficulties with the inexperience of replacement workers. The question to be determined by the Commission was whether there had been a "substantial diminution of activities, production or services" with respect to Chemtech's operations.

■ It was the function of the Commission to weigh the evidence; it was not required to accept all of the evidence presented by Chemtech even though there was no direct testimony in opposition to that evidence. *Tri-State Motor Transit Co. v. Industrial Commission, supra.* When the evidence is viewed in the light most favorable to the findings of the Commission, it was warranted in finding that there had been *no* substantial diminution of activities, production or services at the times the claims for unemployment compensation were filed. We cannot say that the Commission's findings and conclusions are against the weight of the evidence or that it misapplied the law.

We next consider Chemtech's point relied on numbered V. which reads as follows:

"The Trial Court Erred in Failing to Find That the Strikers Were Not Available for Work Within the Meaning of Section 288.040–1(2), R.S.Mo. 1969 (sic)."

In spite of the deficiency of this point we shall attempt a consideration of the issue which we believe is sought to be raised.

The nature of the act under consideration requires us to undertake a somewhat lengthy discussion.

In this case the deputy determined that claimants were not eligible for benefits because there had been a work stoppage as a result of a labor dispute. The deputy having reached that conclusion did not undertake to make a finding as to whether the claimants would otherwise be eligible for benefits under § 288.040.1(2) RSMo 1975 Supp. This section provides:

"1. A claimant who is unemployed and has been determined to be an insured worker shall be eligible for benefits for any week only if the deputy finds that

.   .   .   .   .

(2) He is able to work and is available for work; provided, however, that no person shall be deemed available for work unless he has been and is actively and earnestly seeking work . . ."

Upon review of the deputy's determination by the Appeals Tribunal the referee considered only the issue determined by the deputy and specifically rejected the issue of the eligibility of the claimants under § 288.-040.1(2) RSMo 1975 Supp. because the issue was not before him.

■ The decision of the Appeals Tribunal that claimants were not ineligible for benefits by reason of § 288.040.5(1) RSMo 1975

Supp. was not a finding that they were eligible for benefits.

At this point in the proceeding if claimants were able to work and available for work, benefits would be payable during the pendency of the review process for the weeks in which they were eligible in accordance with the provisions of § 288.070.5 RSMo 1975 Supp.[1] and § 288.210 RSMo 1969.[2] It was incumbent upon the deputy to make the determination as to whether they were eligible for benefits in accordance with § 288.040 RSMo 1975 Supp.

The determination of the deputy in that regard would be appealable to the Appeals Tribunal. It is apparent that the statute requires a determination of eligibility of claimants which includes ability to work and availability before that issue can be reviewed under the appellate procedures.

■ The circuit court's review is circumscribed by § 288.210 RSMo 1969 which provides:

"In any judicial proceeding under this section, the findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law . . ."

The circuit court does not try the case de novo and is restricted to a review of the issues determined by the Commission.

Only the deputy can make the determination of eligibility in the first instance. That finding may be appealed to the Appeals Tribunal for its decision on the evidence before it.

1. § 288.070.5 RSMo 1975 Supp. reads as follows: "Benefits shall be paid promptly in accordance with a determination or redetermination under this section, or the decision of an appeals tribunal, the industrial commission of Missouri or a reviewing court upon the issuance of such determination, redetermination or decision (regardless of the pendency of the period to apply for reconsideration, file an appeal, or petition for judicial review as provided in this section, or section 288.190, 288.200 or 288.210, as the case may be, or the pendency of any such application, appeal, or petition) unless

and until such determination, redetermination or decision has been modified or reversed by a subsequent redetermination or decision, in which event benefits shall be paid or denied for weeks of unemployment thereafter in accordance with such modified or reversed redetermination or decision."

2. § 288.210 RSMo 1969 in pertinent part reads as follows: "[a] petition for judicial review shall not act as a supersedeas or stay unless the commission shall so order."

We cannot tell from the present record whether the deputy determined that the claimants were eligible for benefits. If the deputy made such a determination Chemtech's remedy was to appeal from that determination. It could not have the issue tried by the circuit court.

The trial court did not err in failing to make findings respecting claimants' eligibility in accordance with § 288.040.1(2) RSMo 1975 Supp.

We have reviewed the other issues sought to be raised by Chemtech and we find them to be without merit. A discussion of those points would be of no precedential value.

The judgment of the trial court affirming the decision of the Commission is affirmed.

STEPHAN, P. J., and DOWD, J., concur.