**Murl LUSHER, Appellant,**

v.

**GERALD HARRIS CONSTRUCTION, INC., and Division of Employment Security of the Missouri Department of Labor and Industrial Relations, Respondents.**

**No. WD 55906.**

Missouri Court of Appeals, Western District.

April 27, 1999.

Jeffrey D. Sayre, Green City, Attorney for Appellant.

Sharon A. Willis, Government Counsel, Kansas City, Attorney for Respondent Division of Employment Security.

Before: LOWENSTEIN, P.J., and SPINDEN and HOWARD, JJ.

HOWARD, Judge.

This is an appeal by Murl Lusher from an order by the Labor and Industrial Relations Commission ("Commission") affirming the decision of an appeals tribunal, which determined that he was disqualified for unemployment benefits by reason of his voluntary separation from work on August 26, 1997. Lusher raises two points on appeal. He claims the Commission erred by affirming the findings of fact, conclusions of law and decision of the Division of Employment Security ("Division") because the Division's findings and conclusions are arbitrary, capricious, unreasonable, not supported by competent and substantial evidence on the record, and an abuse of discretion in that 1) there is no evidence that car trouble led to a voluntary quitting by Lusher, and the procedures used by the appeals tribunal and Commission were defective; and 2) the statements made to Lusher by his employer were indicative of discharge and not of a voluntary quitting because they would reasonably lead an employee to believe that he had been discharged.

We affirm.

### Facts

On August 26, 1997, Murl Lusher was employed by Gerald Harris Construction, Inc., and had worked for that company for about three months prior to that date. Gerald Harris was the boss, and Lusher's immediate supervisor was a man named Shorty. When Gerald Harris and Shorty hired Lusher, both knew that he could not travel due to travel restrictions. When he was hired, Lusher informed them that he was on federal work release and that he could not travel.

Lusher's employment started in Kirksville, which is 17 miles from his home in Green Castle. When the construction job in Kirksville ended, Harris Construction went to work at another site in Vandalia, Missouri. Lusher's parole officer gave him permission to travel as far as Vandalia for the construction job he was working on August 26, 1997. Lusher had not been given permission to travel to the company's next job in Mountain Grove, Missouri or Knoxville, Tennessee.

Lusher filed a claim for unemployment compensation benefits on January 7, 1998. A deputy of the Division of Employment Security ruled on January 27, 1998 that Lusher is disqualified from receiving benefits because he left work from his employer, Gerald Harris Construction, Inc., on August 26, 1997 voluntarily and without

good cause attributable to his work or employer. The deputy found that Lusher quit because he believed he would be required to travel outside Missouri to work, but that Lusher was not required to work in any other states.

Lusher filed a notice of appeal of the deputy's determination. On March 3, 1998, a telephone conference hearing was held on the appeal. Lusher was the only person who testified at this hearing. On March 4, 1998, the appeals tribunal made the following findings of fact:

> The claimant worked for the employer for approximately three months doing concrete work. He last worked approximately August 26, 1997. The claimant was working at Vandalia that time and his vehicle blew up. The claimant was on federal parole and the permission of his parole officer was required in order for him to travel anywhere outside the western district of Missouri. The claimant had been given permission to work at Vandalia by the parole officer. When the claimant explained that the next work location would be Mountain Grove the parole officer refused permission. There was continuing short term work at Vandalia, but the claimant was unable to continue working there because of his transportation problems.

The appeals tribunal then made the following conclusions of law:

> The claimant left work voluntarily on August 26, 1997, when he ceased having appropriate transportation to and from work. The claimant knew that his job was going to end in the near future because the next work location was at Mountain Grove, Missouri where he did not have permission to travel from his parole officer. However, the reason that the claimant left when he did had to do with transportation problems and was thus not attributable to the work or the employer.

The appeals tribunal affirmed the deputy's determination that Lusher was not entitled to unemployment compensation benefits.

On March 12, 1998, Lusher filed an application for review with the Labor and Industrial Relations Commission. In the application for review, Lusher included a statement in which he made the following contentions: On or about August 22, 1997, his car engine blew up and he had to take two days off work to find another car. Lusher informed his immediate supervisor of the reason he missed work, and the supervisor said all right. When he returned to work, Gerald Harris asked him why he had missed two days of work, and Lusher told him. Harris got angry when he heard this. Lusher then told Harris that Vandalia "would be the last job" because his parole officer would not give him permission to travel to other job sites. Harris then said to him, "Well then you know what you got to do. I'm not putting money and time in you if you can't travel with the job." Lusher then asked Harris whether he wanted him to finish the Vandalia job, and Harris responded, "No, go on home, because you don't work here anymore." Lusher then left the job site.

Lusher also included in his application for review the signed statements of three co-workers who heard various parts of the conversation between Harris and Lusher, including the language suggesting that Lusher was discharged.

The Commission adopted the decision of the appeals tribunal as the decision of the Commission in this matter. One member of the Commission dissented. This appeal followed.

### Standard of Review

■ We will affirm a factual determination by the Commission as to whether an employee voluntarily left his employ or was discharged if it is supported by competent and substantial evidence on the record as a whole. *Sokol v. Labor and Indus. Relations Comm'n,* 946 S.W.2d 20, 24 (Mo.App. W.D.1997). We review the evidence in a light most favorable to the findings and decision of the Commission

and disregard all opposing and unfavorable evidence. *Burns v. Labor and Indus. Relations Comm'n,* 845 S.W.2d 553, 555 (Mo. banc 1993).

## Point I

The first point on appeal is that the Commission erred by affirming the findings of fact, conclusions of law and decision of the Division because the Division's findings of fact and conclusions of law were arbitrary, capricious or unreasonable and unsupported by competent and substantial evidence on the record in that there is no evidence indicating that car trouble led to a voluntary quitting by Lusher. Specifically, Lusher claims that the procedures used by the appeals tribunal and Commission were defective for the following reasons: 1) the "fact" of car trouble is not supported in the record, and therefore facts outside the record were considered by the appeals tribunal, the decision of which was adopted by the Commission; 2) the Commission, in finding that car trouble was the reason for separation, could only have done so by accepting Lusher's application for review and its additional accompanying documentation as an "application for permission to submit additional evidence" pursuant to 8 CSR 20–4.010(5), but the Commission failed to consider the clearly and convincingly competent and substantial evidence in the additional evidence indicating that no voluntary quitting occurred but that Lusher was discharged; and 3) the Commission erred in adopting the underlying decision of the appeals tribunal as its own because the appeals tribunal failed to follow the specific requirements of the Division in conducting the hearing and failed to conduct the hearing in a fair and impartial manner and in accordance with § 288.190 [1] in that the referee acted as the advocate and attorney general for the Division, prejudicing Lusher's right to have a fair hearing.

We first consider Lusher's claim that the "fact" of car trouble is not sup-

ported in the record, and therefore facts outside the record were considered by the appeals tribunal, the decision of which was adopted by the Commission. At the hearing before the appeals tribunal, when asked about the job at the Vandalia site, Lusher testified as follows:

Q. Okay. Did you finish that job?

A. No, ma'am. I couldn't.

Q. Okay. And why couldn't you?

A. Well I—for one reason why is I couldn't be away from home. My car blew up and I—when I told him that— my parole officer Christopher Buckman that when I got done with Vandalia we was supposed to go to Mountain Grove, Missouri, and then to Knoxville, Tennessee, and he said well no you need to find something closer to home.

Q. Okay. So at the time your job ended, Mr. Lusher, was there still work in Vandalia for you if you'd been able to get there?

A. Yes—yes, ma'am, there was.

\* \* \* \* \*

This testimony could reasonably lead the appeals tribunal to believe that car trouble was the reason Lusher could not continue his employment. The evidence submitted with the application for review, including the statements of the three witnesses to the conversation between Harris and Lusher, was not before the appeals tribunal. The appeals tribunal had only the statements of Lusher to rely on in making its decision. If Lusher failed to clearly articulate to the referee his version of what happened or provide a thorough and convincing explanation, that cannot be blamed on the appeals tribunal, as the referee may not serve as an advocate for either party. *See Davies v. Carter Carburetor, Div. ACF Indus., Inc.,* 429 S.W.2d 738, 753 (Mo.1968).

We next consider Lusher's claim that the Commission, in finding that car

1. All statutory references are to RSMo 1994.

trouble was the reason for separation, could only have done so by accepting his application for review and its additional accompanying documentation as an "application for permission to submit additional evidence" pursuant to 8 CSR 20–4.010(5), but the Commission failed to consider the clearly and convincingly competent and substantial evidence in the additional evidence indicating that no voluntary quitting occurred but that the claimant was discharged.

We disagree with Lusher's contention that the Commission could only have adopted the findings of the appeals tribunal by accepting his application for review and its accompanying documents as an application for permission to submit additional evidence. The same evidence that was before the appeals tribunal and that allowed the appeals tribunal to find that Lusher voluntarily quit because of car trouble would allow the Commission to reach the same conclusion. In addition, none of the procedures for submitting additional evidence to the Commission were followed. Lusher did not file an application to submit additional evidence, nor did the Commission grant or deny the additional evidence in the application for review as though it was an application for permission to submit additional evidence. There is no evidence, merely speculation on Lusher's part, that the Commission considered the additional evidence Lusher submitted with his application for review.

■ We last consider Lusher's argument that the Commission erred in adopting the underlying decision of the appeals tribunal as its own because the appeals tribunal failed to follow the specific requirements of the Division in conducting the hearing and failed to conduct the hearing in a fair and impartial manner and in accordance with § 288.190[2] in that the referee acted as the advocate for the Division, prejudicing Lusher's right to have a fair hearing.

■ Decisions rendered by an administrative body are presumed to be valid, and appellants carry the burden of overcoming this presumption by establishing unfairness in the procedure. *Kramer v. Mason*, 806 S.W.2d 131, 135 (Mo.App. E.D.1991). We find that Lusher has failed to sustain his burden.

■ A duty rests upon the agency administering the beneficent Social Security laws to exercise considerable responsibility to explore the factual aspects of each situation that tend to prove or disprove the right of the claimant. *Smith v. Labor and Indus. Relations Comm'n of Missouri*, 656 S.W.2d 812, 818 (Mo.App. W.D.1983). However, it is elementary that a referee must observe the strictest impartiality and show no favor to either of the parties by her conduct, demeanor or statements. *Jones v. State Dept. of Public Health and Welfare*, 354 S.W.2d 37, 40 (Mo.App.1962).

Lusher refers to several occurrences that he claims indicate that the referee failed to conduct the hearing in an impartial manner. First, he claims the referee violated 8 CSR 10–5.015(11) by not setting forth the procedures to be followed during the hearing. We disagree. After several preliminary statements giving the background of the case and explaining the reason for the hearing, the referee stated as follows:

After hearing the evidence today I will decide whether the work separation was a voluntary leaving or a dismissal, further if a voluntary leaving whether that leaving was with good cause attributable to the work or employer, if a dismissal whether that dismissal was for conduct connected with the employment. I'll

2. Section 288.190.1 provides as follows:
The director shall designate an impartial referee or referees to hear and decide disputed determinations, claims referred pursuant to subsection 2 of section 288.070, and petitions for reassessment. No employee of the division shall participate on behalf of the division in any case in which the division employee is an interested party.

place you under oath. I'll have some questions for you. After my questions if there's something more you want to add you'll be given a chance to do so. That will conclude the hearing. From that information I will prepare a written decision and that decision will be mailed to you at a later date. I will not give you a decision today. Do you have any questions about the purpose or the procedure of the hearing?

Lusher responded, "No, ma'am." We find that the referee adequately set forth the procedures that would be followed both during and after the hearing, in addition to giving Lusher an opportunity to ask about anything he did not understand.

■ Second, Lusher claims the referee did not make a determination that she would deviate from 8 CSR 10–5.015(11), which requires that the appellant first present evidence to show that the determination appealed from is in error unless the tribunal determines otherwise. Lusher claims that he was not allowed to present evidence at all, but only to respond to questions by the referee. Apparently Lusher is contending that if the referee determines, pursuant to 8 CSR 10–5.015(11), that the appellant should not first present evidence that the determination appealed from is in error, she must do so in writing. However, he cites no authority to support this contention. It is apparent that the referee simply chose to modify the order of the procedures, which was within her discretion. In addition, toward the end of the hearing, the referee asked Lusher, "Is there anything else that I've not asked you that you want me to know?" This clearly gave Lusher ample opportunity to inform the referee of any reason why he believed the determination appealed from was in error.

Third, Lusher argues that the referee asked pointed questions and also repeatedly interrupted him in the middle of his answers. While Lusher concedes that near the end of the hearing the referee asked him whether there was anything else that she had not asked that he wanted her to know, he contends that by reviewing the interruptions to his testimony and by reviewing the general direction of the questioning, it was obvious that he lost his train of thought and it could be inferred that he was led to believe that some of the facts that he later mentioned in his application for review were not relevant, and therefore he did not provide that information to the appeals tribunal. We find nothing in the transcript to indicate any bias on the part of the referee or that Lusher was not given the opportunity to give a thorough explanation of why he believed he was discharged.

■ An additional argument asserted by Lusher is that the Division of Employment Security failed to comply with its own rules in that the record on appeal does not demonstrate that the Division's informational pamphlet concerning hearings was provided to Lusher as required by 8 CSR 10–5.015(1)(A). Lusher did not raise this claim of error in his point relied on. "A reviewing court is obliged to determine only those questions stated in the points relied on. Issues raised only in the argument portion of the brief are not presented for review." *Martin v. McNeill,* 957 S.W.2d 360, 366 (Mo.App. W.D.1997). Therefore, we do not consider this claim of error on appeal. Point denied.

### Point II

■ The second point on appeal is that the Commission erred by affirming the findings of fact, conclusions of law and decision of the Division because the Division's findings of fact and conclusions of law are arbitrary, capricious, unreasonable, unsupported by competent and substantial evidence on the record, and an abuse of discretion because the record and supporting case law indicate that the statements made to Lusher by his employer were statements indicative of discharge and not of a voluntary quitting in that those statements would reasonably lead an

employee to believe that he had been discharged.

 The burden is on the unemployment compensation claimant to prove eligibility for benefits. *Sokol*, 946 S.W.2d at 23. Where the employer claims that the employee voluntarily left his employment without good cause attributable to his employer, the employee has the burden of proving that this is not the case, either by showing that he left work for good cause attributable to his employer, or by showing that he did not voluntarily leave work but rather was discharged. *Id.* We find that Lusher has failed to meet his burden in this case.

 In considering this point on appeal, we review only the evidence that was properly before the Commission. In this case, that does not include the additional documentation submitted with Lusher's application for review. While this additional evidence bolsters Lusher's case, it was not properly before the Commission pursuant to a grant of permission to submit additional evidence, and therefore we cannot consider it as part of the record.

At the hearing before the appeals tribunal, Lusher testified as follows:

Q. Okay. What was the reason for your work separation, that is did you quit or were you dismissed?

A. Well, ma'am, this is the—this is the decision. See, I'm on federal parole or supervised leave—

Q. Okay.

A. —and I cannot travel. And Gerald Harris and Shorty knew that I could not travel when they hired me. And when we left—we finished the job in Kirksville, Missouri, we was supposed to travel and I couldn't travel. And I told them that and they said well if you can't travel you know what you got to do. And I said well I guess I do. So actually they did not fire me or say I was

fired. I just said well I can't—I can't travel, I got—I got to go home. And—

\* \* \* \* \*

 This testimony conflicts with Lusher's later testimony that the reason he did not finish the job in Vandalia was because his car blew up.[3] As the ultimate fact finder, the Commission could believe all, none or any part of the testimony of the interested parties. *Allen v. Green Ridge R–VIII School Dist.*, 892 S.W.2d 635, 637 (Mo.App. W.D.1994). If the evidence would warrant either of two findings, as it does in this case, the courts are bound by the Commission's determination and the existence of contrary evidence is irrelevant. *Id.; see also Gudde v. Heiman Grain, Inc.*, 830 S.W.2d 574, 576 (Mo.App. W.D.1992) (finding that where the evidence permits conflicting inferences to be drawn, the ultimate question is one of fact and the decision rests with the Commission).

 In addition, determination of the credibility of witnesses in an unemployment compensation case is a function of the administrative agency. *Burns*, 845 S.W.2d at 555. Lusher argues that while an administrative agency may base its decision solely on a finding of lack of credible testimony, though such testimony is uncontradicted or unimpeached, the agency may not arbitrarily disregard or ignore undisputed testimony of a witness not shown to have been impeached or disbelieved by the agency. *Missouri Church of Scientology v. State Tax Comm'n*, 560 S.W.2d 837, 843 (Mo. banc 1977). Only if the agency makes a specific finding that undisputed or unimpeached evidence is incredible and unworthy of belief may it disregard such evidence. *Knapp v. Missouri Local Gov't Employees Retirement Sys.*, 738 S.W.2d 903, 913 (Mo.App. W.D.1987); *Wilson v. Labor and Indus. Relations Comm'n*, 573 S.W.2d 118, 121 (Mo.App.1978). While this is a valid statement of the law, it is not

---

3. This testimony is set forth in Point I as part of the discussion of Lusher's claim that the

finding of car trouble was not supported by evidence in the record.

relevant to the present case because Lusher's testimony before the appeals tribunal could be considered self-contradictory. Point denied.

The order of the Labor and Industrial Relations Commission is affirmed.

All concur.